# Carlisle Bank *against* Barnett.

The appropriation by the court of a fund raised by the sale of real estate to a judgment, if not available immediately to the party, in consequence of an appeal from the decree to the Supreme Court, is not such a payment or discharge of the judgment as will relieve a surety for the same debt from the payment of subsequently accruing interest.

ERROR to the Common Pleas of *Perry* county.

The Carlisle Bank against George Barnett. *Scire facias* to revive a judgment.

The parties agreed to the following facts, to be considered in the nature of a special verdict, and which were submitted to the court upon written arguments:

John D. Creigh gave a note to the Carlisle Bank, dated 27th December 1837, for $2500, payable 60 days after date, with George Barnett, James Marshall, James M'Kee, and John Junkin, sureties — all jointly and severally bound. A bond of the same date was given by Creigh to the bank, as collateral security, in the penalty of $5000, conditioned for the payment of $2500 upon the 27th day of February then next, and judgment was entered upon the said bond in Perry county, No. 31, January term 1838. Some payments were made to the bank upon the aforesaid note by Creigh, and it was renewed in bank with the same sureties, dated 1st May 1838, for the payment of $2000, 60 days after date.

[Carlisle Bank v. Barnett.]

Samuel Darlington held bonds and a mortgage for securing their payment to him of a larger sum of money dated the 20th September 1836. A judgment was entered in No. 60, August term 1837, on one of said bonds. The mortgage referred to was a lien upon the Beelin tract of land in Perry county, and it was transferred by Samuel Darlington by the procurement of Mr Creigh to George Barnett and others, the said sureties, as an indemnity to the said sureties of John D. Creigh in the said note in bank, to the amount of $2500 of the said mortgage, on the 27th of December 1837, with interest from the date. The Beelin tract of land referred to was afterwards sold at sheriff's sale, as the property of John D. Creigh, the 9th of November 1839, to S. Alexander, Esq., for $8150. The money was brought into court, and a rule had for its appropriation. It was referred by the court to an auditor on the 5th November 1840, to calculate and report the amount due out of the fund to be paid the respective claimants, for the purpose of appropriation. The counsel for the said sureties, as well as the counsel for the bank, aided in procuring the appropriation and the appointment of auditor. On the 9th day of December 1840, the auditor made his report, which was confirmed by the court.

In virtue of this lien of the said mortgage and assignment, there was appropriated to the said claim of the Carlisle Bank as follows:

Balance of judgment No. 31, November term 1838, ................ $2081.33
Interest from 4th of March 1839, till 4th of November 1839, ........ 83.25
                                                                    ─────────
                                                                    $2164.58

Being the whole amount of the debt and interest due up to the 4th of November 1839, the return day of the process on which the said land of John D. Creigh was sold.

Suits had been brought by the bank against the sureties on the note, Nos. 34, 35, 36 and 37, of January term 1839, and judgments had thereon for debt and interest, against the said defendants, at April term 1839.

Writs of *scire facias* were issued on the judgments, No. 16 of August term 1840, against the said George Barnett, and Nos. 17, 18 and 19 v. the other sureties. The *scire facias* v. *Barnett* is the case now in hand.

Sheriff Shuter, by the hands of Mr Alexander, paid to the attorney of the bank, on the 20th of July 1841, $2164.58, the amount appropriated to the claim of the bank as aforesaid, with $18, a part of the interest that had accrued thereon.

On the 20th November 1840, Jonas Ichez entered an appeal to the Supreme Court from the decree of the court making appropriation, &c., alleging he was aggrieved in regard to a judgment not reached by the fund appropriated. But this appeal was not entered in the Supreme Court. The plaintiff in this suit now

III. — 32

claims a judgment for the unpaid balance of interest on its claim, agreeably to the following statement:

*Judgment, No. 31, January term* 1838, *Bank* v. *Creigh; alias venditioni exponas, No. 31, January term* 1839.

| | | |
|---|---:|---:|
| Balance of debt on judgment, per calculation of Auditor, ............ | $2081 | 33 |
| Interest from 4th of March 1839 till 20th of July 1841, 2 years, 4 months, 16 days, ...................................... | 298 | 30 |
| | $2379 | 63 |
| Then paid, per Mr Alexander's receipt, ........................ | 2182 | 58 |
| | $ 197 | 05 |
| Interest from 20th of July 1841 till 2d of August 1841, ............ | | 16 |
| Balance due, ............................................. | $ 197 | 21 |

If the law be in favour of the plaintiff on said facts, judgment to be entered for the plaintiff for the balance due per statement, with costs, as of its date. If the law is against the plaintiff, judgment to be entered for the defendant.

The following is one of the rules of the Court of Common Pleas of this district.

Rule 71. Upon the appropriation of the proceeds of the sale of real estate by the sheriff, the interest upon judgments covered by the sale, shall be estimated to the return day of the writ, upon which the sale shall have been made. But if the money shall have been brought into court, or the appropriation delayed at the instance of the defendant, and any of his creditors shall not be prejudiced thereby, then interest shall be estimated to the time when the appropriation shall be made.

The court below rendered judgment for the defendant.

*Reed,* for plaintiff in errror. John D. Creigh was the principal, George Barnett the surety, in the original note to the bank. The principal gave the assignment of the Darlington mortgage as back-bail, or indemnity to his sureties, not to the bank. The appropriation, though nominally to the bank, was virtually, and in effect, to the sureties. The bank had no legal claim upon the fund; the sureties had. The bank judgment was not reached. This back-bail, or indemnity, was exhausted for the benefit of the sureties; but it left unpaid to the bank a balance of $197.21. Shall the sureties not be responsible for this deficiency?

It was the fund of John D. Creigh, the principal, to which the bank had no legal claim; that was first applied in relief of the sureties as far as it went; was it not the apprehension of this contingency that induced the bank to require bail? And was it not to meet this contingency bail was given?

In law and in equity the primary obligation of the principal, and of his sureties, to pay the whole debt and interest, as regards the plaintiff, was of the same nature and extent as regards the

payment of the debt to the bank; all are alike principals. The relation of principal and surety, after judgment, and all the incidents growing out of it, cease. Here then were regular judgments against the principal and against each of the sureties, and this is a *scire facias* to revive the judgment against the sureties for the unpaid balance which could not be made out of the property of the principal. The defendants are all principals, and are legally bound. 16 *Serg. & Rawle* 252; 2 *Serg. & Rawle* 20; 5 *Johns. C. Rep.* 305; 3 *Wheat.* 520.

Unless the bank has done something affirmatively to release the sureties, they are still bound. Taking part of the debt and interest from the principal can, in no way operate as a discharge of the sureties as to the balance. The bank was not bound to take partial payments, or less than the whole, and might have pursued the sureties alone; but this part payment being procured to be made by the sureties, cannot be a discharge to them of any unpaid balance.

It is well-settled law, that plaintiff may proceed against all and every of the defendants, until he get full satisfaction. Less than debt and interest cannot be a satisfaction of a legal claim secured by judgment.

Stopping interest at the return day of the process on which sale of J. D. Creigh's property was made, could only apply to a judgment against Creigh. But the appropriation in this case was not on any such judgment. The bank had no control over it. The judgment of the bank against John D. Creigh was not reached; no part of it was paid, or could be paid out of the fund in court. It was the fund belonging to the bail that was applied under the assigned mortgage; but it was not enough; and the bank now claims the balance off them.

The bank had four judgments, each covering the whole claim. Their judgment against Creigh, the principal, altogether failed. The bail paid a part through the assigned mortgage, but not all. Under what plea in law can the plaintiff in this *sci. fa.* be defeated? Is the judgment satisfied? Under what plea in equity can the plaintiff in this *sci. fa.* be defeated? Did the defendants bail the payment of the whole debt and interest, or only a part? Could more be had from the principal? If so, it was the duty of the bail to see to it. Did the plaintiff do, or omit to do anything by reason of which the whole amount of debt and interest was not collected from the principal? We have a legal judgment against the defendant, and a legal claim for an unpaid balance; why shall we not have our judgment revived? Whatever judgments may have been satisfied, ours was not.

*Watts*, for defendant in error.

The question seems to be, whether, by the appropriation of the proceeds of the sale of the real estate of John D. Creigh, the judg-

ment of the bank was satisfied, so far as to relieve the sureties from further liability, or entitle the bank to future interest?

The broad principle is clearly settled, that in all judicial sales of real estate, for the payment of debts, interest ceases upon them at the return day of the process or authority from the Orphans' Court, upon which the sale is made. *Ramsey's Appeal*, (4 *Watts* 73). Now, this sale was made by judicial process, and in the language of the special verdict, " there was appropriated to the said claim of the Carlisle Bank as follows:—$2164.58 being the whole amount of the debt and interest due up to the 4th of November 1839, the return day of the process on which the said land of J. D. Creigh was sold." It cannot be a matter of any consequence, *why* the court appropriated the money to the claim of the bank— whether it was by virtue of the lien of the mortgage, or the lien of their own judgment. It is sufficient that the sureties procured the appropriation to be made *to the bank*, and that the bank received the money in pursuance of it. The hardship of the case, if there be any, arises out of the delay occasioned by the entry of an appeal never prosecuted. This is a loss which always arises in such cases, and it would seem to be a new principle to establish, that because the bank has security for a debt covered by a sale of defendant's property, they may resort to the property and get their money, and then resort to the sureties for the losses which happen in consequence of the law's delay. In the case of *Stewart* v. *Stocker*, (13 *Serg. & Rawle* 205), Chief Justice Tilghman says: " Interest is never demandable unless money is unlawfully withheld;" and in the case of *Beetim* v. *Buchanan*, (4 *Watts* 62), Judge Rogers refers to the above case with expressions of approbation: and it will be perceived by a reference to these two cases, and that of *Ramsey's Appeal*, (4 *Watts* 73), that the law is, " when the money is made by sale of the property and in the hands of the officers of the law, that the *debt should be considered as paid, to the amount of the money raised by the sale*." In this case the money raised greatly exceeded the claim of the bank, out of which they consented to have an appropriation *in their favour* for the full amount of their debt and interest. If the bank had taken the ground, that they would not accept an appropriation to their judgment upon the grounds on which it was made, there would have been some plausibility in the argument that their judgment was not reached or paid, and that interest continued to run upon it; but that is not the case. They did accept, and the sureties did assent to a surrender of their claim to an appropriation in their favour on the mortgage. If there had been no appeal, clearly there would have remained no claim of the Bank upon the sureties; and why should the delay occasioned by the appeal be visited with evil consequences upon them? The loss of interest under such circumstances is a legal consequence, and therefore *damnum absque injuria*.

[Carlisle Bank v. Barnett.]

But independent of these general principles and authorities, the 71st rule of the court is conclusive of the question.

The opinion of the Court was delivered by

SERGEANT, J.—The defendants being bound to the plaintiffs for the whole debt, could be discharged from it only by payment or release. There was clearly no payment, for the sum received fell short of the debt. Was there a release, or anything equivalent? It seems that there was an appropriation of a sum of money with the consent of the plaintiffs as well as of the defendants, which, had it been available to the plaintiffs, would have been payment; but from circumstances not under the control of either party, it was not available, but remained locked up in court. Now, why should the plaintiffs bear this loss? The mere appropriation by a debtor of a fund to meet his creditor's claim, is not a payment of the debt, if, without the act or default of the creditor, the money does not come into his hands, though such appropriation was made by his consent. His right to be paid his debt still continues. There is no evidence in the case of an agreement by the plaintiff to accept this appropriation in full of his claim, or to substitute it for his debt. Nor can anything more be inferred from the facts than an understanding that the debt should be paid in full. But it was not, and therefore the claim remained. The rule of court does not affect the question. It only regulates the period up to which the fund raised is to pay interest: it does not pretend to determine what amounts to satisfaction of the creditor's claim. In our opinion, there was no reason why the defendants should not pay the balance due. The judgment of the court below is reversed, and agreeably to the case stated, judgment is to be entered for the balance due.

Judgment reversed.