# Burkholder's Appeal.

1. It has been definitely settled that by the final confirmation of a sale made by an assignee for the benefit of creditors, under the Act of February 17th 1876, the land is converted into money as of that date, and at the same time discharged from all such existing liens as are intended to be divested by the sale ; and that the liens so divested are to be paid out of the proceeds of sale, according to their priority on the day of confirmation, with interest to that date : Carver's Appeal, 8 Norris 276 ; Tomlinson's Appeal, 9 Id. 224 ; and Herbst's Appeal, Ibid. 353, followed.

2. Where the liens due and payable presently are sufficient in amount to exhaust the purchase-money, the sale should be for cash, unless all parties interested unite in requesting a time sale.

3. Where there is a time sale carrying interest, as the instalments of principal fall due, the interest thereon should be divided pro rata among the creditors, in proportion to the amount each was entitled to receive out of the principal.

4. A compensation of five per cent. to the assignee not considered excessive, under the circumstances of this case.

[Burkholder's Appeal.]

May 25th 1880.   Before Mercur, Gordon, Trunkey, Sterrett and Green, JJ.  Sharswood, C. J., and Paxson, J., absent.

. Appeal from the Court of Common Pleas of *Mifflin county:* Of May Term 1880, No. 195.

· Appeal of Margaret Burkholder, administratrix, and Thompson G. Sigler, administrator of Joseph Burkholder, deceased, from the decree of the court, confirming the report of the auditor to distribute the funds in the ·hands of George Bates, assignee of John Taylor.

On September 29th 1876, John Taylor made an assignment for the benefit of creditors to George Bates.   At the next term of court he procured an order of the court to sell the real estate of the assignee, consisting. of a valuable farm.   It was sold on December 23d, the day it was advertised to be sold, without any adjournment, to Dr. Hale, whose lien came second after appellants' judgments.   The sale was confirmed January 8th 1877.   The purchase-money was $17,011.74, one-third cash and balance in two equal annual payments with interest.   On December ·13th 1878, the assignee filed his account to January Term 1879, charging himself with $17,011.74, principal of sale, and $1441.74, interest on same, and claiming credit for $807.57 interest on payments made to various creditors, and also a credit for $850, for his commission on selling the farm.   Exceptions were filed by Dr. Hale and appellants to the payments to the different judgment-creditors, and to the assignee's compensation.   The court at first reduced the compensation of the assignee to $500, and referred the amount in assignee's hands to Joseph W. Parker, Esq., for distribution.   The auditor reported to April 7th 1879, giving the assignee $500 for his services, and making distribution on the basis that interest on claims ceased on the day of sale, and the amount of sale, after deducting costs, was distributed as far as it would go to the judgment-creditors in the order of priority, and the interest on the deferred payments, together with the interest on the different payments made to the different creditors. up to the filing of the account of the assignee, was distributed ·pro rata to the judgments reached. Exceptions were filed to this mode of distribution, and to the reduction of assignee's compensation.   The court referred the matter back to the auditor, who reported, allowing the assignee $850 for his compensation, and making distribution on the principle of allowing interest on the different judgments up to the confirmation of the assignee's account; also submitting another schedule of distribution, allowing interest on the different judgments up to confirmation of sale, and appropriating the interest on the deferred payments pro rata to the judgments reached.   The appellants filed exceptions to this report: 1st. That interest should have ceased on the day of sale, and the accrued interest should have been dis-

tributed pro rata to all the claims reached. 2d. That the compensation allowed assignee was excessive. The court overruled the exceptions and confirmed the report.

The appellants, whose judgments were not reached, took this appeal, and alleged that the court erred as follows :

1. In confirming the report of the auditor.

2. In overruling the 3d exception to auditor's report, to wit : The auditor adopted the wrong plan of distribution, the interest should cease on the claims on the day of sale, or at furthest at confirmation of sale, and the accrued interest on the fund should have been distributed pro rata to all the claims reached.

3. In overruling the 4th exception to auditor's report, to wit : The auditor allowed too much compensation to the assignee and accountant, and erred in overruling the exceptions thereto.

*A. Reed*, for appellants.—The sale of the farm by the assignee under the order of the court was a judicial sale. The uniform decisions of this court in the case of judicial sales have been that the interest on liens thereby discharged ceased at the time of sale. In Ramsay's Appeal, 4 Watts 71, it is said: " A sale under an order of Orphans' Court is a judicial sale," and assimilates it to a sheriff's sale, where the interest ceases on the day of sale. To the same effect is the decision in O'Hara's Estate, 4 Leg. Gaz. 130. In sales by the sheriff the rule and custom are the same : Walton *v.* West, 4 Whart. 221 ; Siter, James & Co.'s Appeal, 2 Casey 178 ; Bachdell's Appeal, 6 P. F. Smith 389.

Any other rule would make the amount of the claims against the debtor that would be paid by such sale depend upon the promptness or delay of the assignee in collecting the purchase-money and filing his account; and it would be difficult for a creditor to know when his claim was reached by a sale. We contend that interest ceases at day of sale, and the interest on the deferred payments and all other interest made out of purchase-money, goes pro rata to all claims reached. The charge of $850 is excessive, it being five per cent. on the sale. On sales of real estate two and one-half per cent. is the usual compensation : Carrier's Appeal, 29 P. F. Smith 230 ; Duval's Appeal, 2 Wright 112. In this case there was no great labor or care involved.

*D. W. Woods* and *John A. McKee*, for appellees.—We do not dispute the proposition that in sheriff's sales, and all other judicial sales, where the property is sold for cash, that interest on the judgments or other liens stops on the day of sale. What we contend for is, that when the property is sold on credit and the deferred payments are drawing interest, that the interest realized out of the fund raised by the sale of the real estate up to its distribution shall be paid to the judgment or lien-creditors in proportion to the

amount of their judgments. Any other rule would work injustice to the prior liens.

If the amounts due the prior lien-creditors could receive no part of this interest, then in all cases of sale, where by law time would be given, it would be the policy of the junior lien-creditors to have the time extended as long as possible, and thus deprive the prior lien-creditors from being paid promptly, lose all interest on their claims, and often thus have junior lien-creditors paid whose judgments were not reached on day of sale by the simple accumulation of interest at the expense of prior liens.

Mr. Justice STERRETT delivered the opinion of the court, June 14th 1880.

It has been definitively settled that by the final confirmation of a sale, made by an assignee for the benefit of creditors under the Act of February 17th 1876, the land is converted into money, as of that date, and at the same time discharged from all such then existing liens as are intended to be divested by the sale ; and that the liens so divested are to be paid out of the proceeds of sale, according to their priority on the day of confirmation, with interest to that date : Carver's Appeal, 8 Norris 276 ; Tomlinson's Appeal, 9 Id. 224 ; Herbst's Appeal, Id. 353. In two of these cases, it is expressly ruled that interest on the liens divested should be computed to the day of confirmation only, and not to the date of payment of the purchase-money. When the liens, due and payable presently, are sufficient in amount to exhaust the purchase-money, the sale should be for cash, unless all parties interested unite in requesting a time sale. In the case before us, the state of the liens was not such as to justify a sale on time ; but no objection was interposed by any of the creditors whose claims were due, and the sale was made, as directed by the court, for one-third cash and the residue in two equal payments in one and two years with interest.. The sale having been thus made and confirmed, the hand-money, less expenses, &c., should have been applied to payment of the oldest liens, in their order, as far as it would reach. The second payment should have been distributed to the liens next in order, and in addition thereto, the interest on that instalment should have been divided pro rata among the same creditors in proportion to the amount each was entitled to receive out of the principal ; and, in like manner, the last instalment should have been distributed to the lien creditors next in order, and the two years' interest thereon divided among them in proportion to their respective shares of the principal. In this way the second and third classes of creditors would have received the interest which accrued on the respective instalments as a compensation or equivalent for the delay in payment of their respective claims. But, instead of thus paying some of the creditors in full, according to

the priority of their respective liens as they existed at the date of the confirmation of sale, the assignee made payments to the older creditors on account, leaving comparatively small balances due some of them.

In the schedule of distribution reported by the auditor and adopted by the court, interest appears to have been computed on the respective liens to January 8th 1879, two years after the sale was confirmed. In this there was error, and the case must be remitted for re-distribution of the fund in accordance, as nearly as may be, with the principles above indicated, taking into consideration, however, the respective dates and amounts of the payments made on account. The interest collected by the assignee justly and equitably belongs to the creditors who are entitled to the principal from which it accrued, and it should be distributed among them in proportion to the amount of their respective distributive shares and the length of time the payment of these shares is respectively postponed on account of the deferred instalments of purchase-money. Those who received nearly the full amount of their claims out of the hand payment, will be entitled to a relatively small proportion of the accrued interest, and those who received nothing until the last instalment matured, will be entitled to more relatively than those who received a portion of the second instalment.

The manner in which the assignee stated his account is not to be commended. The items of expense, &c., pertaining to the execution of the trust, and payments to creditors on account of their distributative shares, are blended together. This should never be done. The account should exhibit, on the one side, the several sums realized from the trust estate, and on the other, the expenses incurred in executing the trust, so that the full net balance for distribution may appear. To this may be appended a schedule giving the dates and amounts of payments to creditors on account of distribution.

If the items of interest amounting to $808.63 for which the assignee has taken credit in his account were not paid to the respective creditors, he is not entitled to credit for the same. In the schedule reported by the auditor, the amount distributed among the creditors is about $7284, from which it appears that the assignee has been allowed credit for the items of interest referred to. This is not correct, unless the interest was actually paid by him.

The third assignment is not sustained. The learned judge at first reduced the compensation of the assignee to $500, but afterwards referred the matter to the auditor, who reported in favor of allowing the amount claimed. In view of the circumstances stated by the auditor, it is by no means clear that the court erred in adopting his recommendation.

The first assignment is very general and not in accordance with

[Burkholder's Appeal.]

the rules of court requiring each error to be particularly specified.

> Decree reversed at the costs of the appellee, and record remitted to the court of Common Pleas with instructions to distribute the fund in accordance with the foregoing opinion.