[Yeatman's Appeal.] .

# Yeatman's Appeal.

102  297
130  456
130  457
102  297
153  332

1. A mortgage creditor of a decedent whose estate is solvent, and whose land has been sold by order of the Orphans' Court for the payment of debts, may recover interest on his accompanying bond after the confirmation of said sale and until the date of payment.

2. *Aliter*, if the estate were insolvent.

February 6th 1883.   Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Chester county :* Of January Term 1883, No. 246.

This was an appeal by John M. Yeatman from a decree of the Orphans' Court of Chester county, dismissing his exceptions to and ordering distribution to be made in accordance with the report of an auditor, appointed to make distribution of the balance in the hands of Wills Passmore, executor of Carlton J. Passmore, deceased.

The facts, as found by the Auditor (John H. Brinton, Esq.), appeared to be as follows : Carlton J. Passmore died in 1881, seised of an estate in Kennett township, consisting of over one hundred acres, which by his last will and testament he devised to his nephews in fee.   The said land was subject to a mortgage executed to secure decedent's bond for $5,000, which was held at the time of Passmore's death by John M. Yeatman.   The personal estate of the decedent proving insufficient to pay this debt, the said real estate was sold under an order of the Orphans' Court at its October Term 1881, and the sale was confirmed by the court on December 11th 1881.   By the conditions of said sale payment was not to be made, and the deed was not to be delivered until April 1st 1882.   On May 8th 1882, Mills Passmore, executor of Carlton J. Passmore, paid over to Yeatman $4,460.68, being the principal of said mortgage debt, less payments on account, and interest thereon to the date of confirmation of the sale.   Yeatman accepted this payment, though tendered in full, as on account merely, and notified the executor that he claimed interest to the date of actual payment.   Before the auditor appointed to distribute the balance found in the hands of the executor, it appeared that the estate was solvent.   Yeatman presented to the Auditor his claim for interest accruing between the date of the confirmation of the sale and the date of the aforesaid payment, amounting to $128.90.   This claim was resisted on behalf of the estate.   The Auditor allowed the claim, which award, upon exceptions filed thereto, was disallowed by the court, and the report recommitted, FUTHEY, J., filing the following opinion :—
" The question raised by this exception was decided by this court—Judge BUTLER being then upon the bench—in Joseph P. Wilson's estate, reported in 1st Chester County Reports 60, and that decision has since been followed in other cases.   In Wilson's estate, the judgments with interest thereon to the day of sale, were paid to their holders by the administrators out of the fund derived from the sale of the real estate.   On the subsequent distribution of the personalty, the creditors thus paid claimed a dividend on the amount of their judgments to meet

the interest, which they claimed had accrued between the confirmation of the sale and the actual date of the payment to them. The court held that no interest accrued after the confirmation of the sale, that with that event their debt was paid, though the money remained in the custody of the law for some time later, but for their use, and the claim for additional interest was disallowed.

The same state of facts, substantially, is presented here. The real estate of Passmore was sold by order of court for payment of debts, and the debt of Yeatman, with interest to the day of confirmation of the sale, paid. The bond is now presented for the interest alleged to be unpaid. In Wilson's estate, the judgments were presented for the same purposes, not as liens, but simply as evidences of debt, for the claim was on the personal fund. We cannot distinguish the cases. The fact that Wilson's estate was insolvent, while Passmore's is solvent, makes no difference. The ground of the decision was that the land was taken from the heirs to pay debts, and that the debt was in law paid, and by reason thereof, was not entitled to participate as a further claim. And such is the principle on which the authorities are based, which hold that interest ceases on liens on the confirmation of an Orphans' Court, or assignees' sale. They cannot be sustained on any other basis. And if a lien is paid, the bond, which evidences the debt secured by the lien, cannot be used as a further ground of claim. See Ramsey's Appeal, 4 Watts 71; Strohecker v. Farmers' Bank, 6 Ibid. 96; Walton v. West, 4 Wharton 221; Tomlinson's Appeal, 9 Norris 224, s. c., 7 W. N. C. 171.

The Auditor having filed a supplemental report with an amended schedule of distribution, Yeatman excepted to so much thereof as disallowed his aforesaid claim, which exception was overruled by the court, and distribution ordered in conformity with the Auditor's second report, whereupon the exceptant took this appeal, assigning for error the action of the court in sustaining the exceptions of the devisees to the first report, and overruling his exceptions to the second report.

*William M. Hayes*, for the appellant.—The court below ignored two important distinctions, viz.: that between a contest of creditors and one of heirs and creditors, and that between a solvent and an insolvent estate. We admit that as between lien creditors and in the distribution of an insolvent estate, interest would cease upon confirmation of the sale. But here the estate is admittedly solvent, and the claim for interest is not resisted by other creditors, but by devisees. To hold that the devisees can enjoy the rents and profits of the estate until April, 1882, and, also the interest, is to violate the principle of

law, that executors shall pay decedent's debts so far as the estate has assets, and that the rights of creditors are higher than those of mere volunteers.    The cases cited by the court below in support of its decision were those of insolvent estates, and, therefore, have no application.    The principle for which we contend is supported by the following cases : Carlisle Bank *v.* Barnett, 3 W. & S. 248 ; Baker *v.* Bank, 12 Harris 391 ; Gordon *v.* Shallcross, 4 Am. L. Reg. (O. S.) 309.

*Alfred P. Reid*, for the appellee.—When the law intervenes and takes the property of the debtor in hand, for the creditor, it is no more inequitable that the creditor should lose his interest than that the debtor should be compelled to pay it, after his property has been taken from him.    Appropriation is payment.

Mr. Justice Gordon delivered the opinion of the court, February 26th 1883.

The appellant held the bond of Carlton J. Passmore, the testator, for the sum of five thousand dollars, which was secured by a mortgage on certain of the real estate of the obligor.  Some time after the death of Carlton J. Passmore, his executor and legatee, Wills Passmore, acting under the authority of an order of the Orphans' Court, sold the real estate for the payment of debts and legacies.

This sale was confirmed December 12th 1881, and on the 8th of May 1882, the executor paid over to Yeatman the full amount of the principal of his bond, but refused to pay the interest accruing between those dates.  Before the Auditor, who was appointed to make distribution of the money raised from the sale above mentioned, the appellant presented a claim for this interest ($128.90), and had it allowed.    To this allowance an exception was taken, which was sustained in the court below, on the ground that the interest on the bond ceased at the time of the confirmation of the executor's sale.    Had the estate of Passmore been insolvent, the doctrine assumed by the court below would have been unexceptionable, for in that event it would have had the support of all the authorities from Ramsey's Appeal, 4 Watts 71, down to the case of the Brownsville Bank, 15 Nor. 347.

But Passmore's estate was entirely solvent, and the sale was not made on the motion of the mortgagee, but upon the motion of the executor and for the purpose of the settlement of the estate.    Under these circumstances, we cannot understand why the appellant was not entitled to his whole claim, debt and interest.    There is a very good reason why a defendant, as in Strohecker *v.* The Bank, 6 Watts 96, should not be charged

with interest after the return day of an execution levied upon his property, for the creditor has thereby paid himself by a sale of his debtor's goods or lands, and the money thus made is then in the hands of the sheriff, who occupies the position of a trustee or bailiff for the plaintiff. If, however, as is admitted in the case cited, the defendant, by his interference, delays the payment of the money to the plaintiff, he is chargeable with the accruing interest. So, as in Ramsey's Appeal, 4 Watts 71, where the lands of an insolvent estate are sold for the payment of debts; there is also a good reason why the interest upon those debts should stop upon the confirmation of the sale, for the fund then belongs to the creditors, and they are entitled to distribution as of that time, hence, there is no fund left for the payment of subsequently accruing interest. But even this rule, as we find by the Brownsville Bank case, above cited, has its exception, for it was there ruled that when the fund continues to draw interest after the date of the confirmation of the sale, the creditor is entitled to his proportionate share thereof. Nor is the case of the Carlisle Bank *v.* Barnett, 3 W. & S. 248, without force, as authority in the question before us. There Barnett was compelled to pay the accruing interest on the obligation, in which he was surety, though by a previous decree of the court there had been awarded to the bank the full amount of its claim from a fund raised upon a collateral judgment. But, as was said by Mr. Justice Sergeant, in that case, this appropriation would have been payment had it been immediately available, but as it was locked up in court, and was not immediately available, there was no payment until the money came into the possession of the bank, hence the liability of the parties to the original obligation continued.

The same language may well be applied to the case in hand. By the executor's sale there was more than enough money raised to have satisfied Yeatman's lien, and had it been immediately applied to the payment of that lien there would have been an end to all controversy, but it was not so applied ; the appellant had to await the motion of the executor, and so it happened that the claim remained unpaid until some six months after the confirmation of the sale. On what principle, then, is Yeatman to be made to forfeit a substantial part of his bond ? Or how can his debt be said to have been paid before he got the money for it ? It is true this was an official sale, and by it the lien of the mortgage was extinguished. But what of that ? It did not extinguish the debt secured by the mortgage ; that remained until it was paid, so that, in effect, the sale had no more significance than if it had been made under a power in the will. It was made for the settlement of a solvent estate ; the money went to the executor, and it was only through him

[Elbert *v.* O'Neil.]

that Yeatman could receive it. The delay was caused by no act of the appellant, nor by any judicial necessity, but by the executor, and for the convenience of the estate which he represented, hence, there is no reason why the appellant should not have had full payment of his claim, debt and interest.

The decree of the court below, so far as it sustains the exception to the auditor's report awarding to the appellant the sum of $128.90, the amount of interest due on his bond after December 12th 1881, is now reversed and set aside at the costs of the appellee, and the auditor's report, as to that amount, is now restored and confirmed.