## Freeman's Estate.

*Orphans' Court sales—Decedents' estates—Lien of decedent's debts—Confirmation of sales—Order entered by clerk—Protection of creditors—Fiduciaries Act of June 7, 1917, P. L. 447—Rules of court.*

1. Rules of the Orphans' Court relating to the sales of real estate of decedents should be so construed as to protect the equities of decedent's creditors.

2. As between two orders of the court, if one requires a construction destructive of the lien of creditors, while the other preserves the lien, the court will adopt the one that protects the common equities of all creditors.

3. Where a rule of court provides that a sale confirmed *nisi* is "to be absolute unless exceptions be filed within thirty days," a confirmation so made is a finality as of the date when filed, unless exceptions are filed.

4. In such case, the voluntary act of the clerk of the court in subsequently entering an order to the effect that, as no exceptions had been filed, the sale was confirmed absolutely, is invalid to defeat the rights of creditors who had not brought suit within a year after decedent's death, but whose claims were seated on the fund by the decree *nisi*, which had been entered within the year.

Exceptions to auditor's report. O. C. Crawford Co., Nov. T., 1923, No. 65.

*C. V. Johnson*, for estate; *John A. Bolard*, for exceptants.

*Roy S. Peters*, for creditors.

PRATHER, P. J., May 4, 1925.—Decedent, Manning Freeman, died April 12, 1923, intestate. On Feb. 4, 1924, his administrator presented his petition to the Orphans' Court of Crawford County, together with a list of creditors of said estate, and secured an order to sell decedent's real estate for the payment of debts. The estate was largely insolvent.

On April 7, 1924, the administrator made report to the court of the execution of said order of sale and secured a formal approval in the following form: "Now, to wit, April 7, 1924, upon consideration of the foregoing return to the order of sale heretofore made in this case and petition for confirmation, and on motion of C. Victor Johnson, Esq., attorney for petitioner, it is ordered and

decreed that the prayer thereof be granted and that the sale of the said several parcels of real estate in said order of sale and in said printed hand-bills to the said purchasers: One to the said Asa Freeman, at and for the price or sum of $900, and another piece to the said Asa Freeman, being Parcel No. 4, described upon said sale bill, at and for the sum of $750; and Parcel No. 2, as designated on said sale bill, to O. H. Schlensker, at and for the sum of $1670; and the third piece, described upon said sale bill as No. 3, to R. D. Peterson, at and for the sum of $750, be confirmed and stand firm and stable to the purchasers thereof, their heirs and assigns forever, and that upon receipt of the purchase money for the same by the said E. W. Freeman, Administrator, that he shall execute and deliver to the said Asa Freeman, and to the said O. H. Schlensker, and to the said R. D. Peterson, a deed of conveyance of said real estate sold as aforesaid, purchased by each of them. Bond required in the sum of Five Thousand Dollars to be approved by the Court."

On the same date, upon the outside of the same return, the clerk entered the following less formal order: "April 7, 1924, the within report presented and sales confirmed *nisi;* this confirmation to become absolute in ten days if no exceptions be filed thereto and upon the payment of the purchase money.— *Per Curiam*, Harriet P. Sterling, Clerk."

On April 18, 1924, the Clerk of the Orphans' Court, without any authority or direction of court, and upon her own volition, made the following entry in said case: "And now, to wit, April 18, 1924, no exceptions having been filed to the within return of sale, the said sale is confirmed absolutely. — *Per Curiam*, Harriet P. Sterling, Clerk."

At the time of said sale none of the claims except a mortgage had been reduced to judgment, nor had any action been brought thereon to preserve or continue their lien. Five days after the return of sale and the confirmation above referred to, namely, on April 12, 1924, the last day within the year following decedent's death, a number of said creditors brought suit against the administrator upon their claims and had the same indexed in the judgment index in said county.

After deducting preferred claims against the real estate, there remained of said proceeds for distribution $2507.65, and after deducting similar preferred claims out of the personal estate, there remained of said fund for distribution $2533.73.

The auditor held that, as to the personal fund, all the creditors of decedent were entitled to participate, and awarded to such general creditors a dividend of .35219 per cent. The dividend allowed on the personal estate so reported was awarded to each of the creditors who had brought suit upon their claims April 12, 1924, and as to the balance of said claims, the auditor reported their payment in full out of the realty fund, leaving a balance in the realty fund of $104.68, which was awarded to the heirs of the said decedent.

In the report of distribution as above recited, the auditor held that all the general creditors of decedent who had failed or neglected to bring their action against the administrator within one year following his death had lost their lien upon the real estate fund, and, hence, could only participate in the distribution of the personalty, and that the balance of the real estate fund, after paying the creditors that had brought such action in full, should be distributed among the heirs of the decedent.

To this report and conclusion of the auditor, the general creditors so excluded from participation in the distribution of the proceeds of the real estate have excepted, and the correctness of this conclusion is the chief inquiry for our consideration.

The 15th section of the Fiduciaries Act of June 7, 1917, P. L. 447, provides, so far as applicable to the question under consideration, that "No debts of a decedent . . . shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent, etc."

The third paragraph of Rule XLV of our Rules of Court provides, concerning sales of realty in the Orphans' Court, that "All such sales shall be confirmed *nisi*, to be absolute unless exceptions be filed within thirty days."

Considering the statute and rule of court and the order of court made upon the return of said sale, the auditor was of the opinion, for the purpose of determining whether the lien of the general or unsecured creditors was transferred from the realty to its proceeds, that said sale was not consummated until April 18, 1924, or a year and five days after the death of said decedent.

The auditor is to be complimented upon his careful consideration of the unique question involved, but after mature deliberation, we are of the opinion that the law, with the equities, requires a different conclusion. In other words, we should so interpret our rule of court as to protect and preserve the rights of the so-called unsecured creditors, if the law will permit such construction.

It is to be observed that, according to the language of the rule of court in question, a sale confirmed *nisi* is "to be absolute unless exceptions be filed within ten days." There is no implication that such order requires any further action on the part of the court to make it final. According to our recollection, there are few instances, if any, where attorneys bring such a return of sale again to the court's attention for any subsequent action or final confirmation.

In this particular case it is called to our attention that the clerk, at the instance of counsel for the estate, made an entry on April 18th of final confirmation, signing the same "*Per Curiam.*" But the record shows there was no court on this day, and it is agreed that this was a voluntary and gratuitous act upon the part of the clerk. Though the clerk made such an entry in this instance, or, as urged, the clerk may have been in the habit of making such entries without the direction of the court, it is of little significance when considered in connection with the language of the rule. The rule makes no suggestion that the clerk shall make such an entry. The fact that the clerk may have acquired the habit of doing a vain thing does not aid us in construing the rule or applying the law. It is clear that, though the rule under the *nisi* confirmation allowed ten days for any party in interest to file exceptions to the proceeding, when no exceptions were filed within said period, the finality of the proceeding was inherent in itself and gathered no sanctity or validity from the entry made by the clerk.

In Golden's Estate, 56 Pa. Superior Ct. 300, Thomas Golden died April 16, 1910. On April 13, 1912, or three days before the lien of unsecured debts expired, which was the two years' limitation of such liens as provided by the Act of May 3, 1909, P. L. 386, the administrator made return to the court that he had sold the property of the decedent for the payment of debts, and thereupon the court directed that the sale "be ratified and confirmed." The purchaser was unable to make payment of the purchase price until about July 1, 1912. He then applied to the title insurance company to insure his title, which the company refused to do, urging that the title was defective for the reason that more than two years had elapsed since the death of decedent, with no

debts of record and no actions having been brought by the creditors upon their claims.

Thereupon, to wit, on July 8, 1912, the administrator reported these facts and secured an order vacating the decree of confirmation entered April 13, 1912. Thereafter the heirs of decedent made sale of the property. The unsecured creditors of said decedent filed their petition for a bill of review, complaining that the order of court made on July 8th, vacating the confirmation of the sale entered as of April 13, 1912, was *ex parte* and prejudicial to them as destructive of their lien upon decedent's real estate.

The lower court granted such bill of review, reversed the order of July 8, 1912, and reinstated the decree of confirmation of said sale made on April 13, 1912. In so doing, the lower court said: "When the sale is confirmed, the amount bid becomes due from the bidder, and if he fails to make payment, it is the duty of the administrator to tender a deed and bring suit for the purchase money if the bidder refuses to abide by his contract."

Upon appeal, the Superior Court, in confirming the judgment of the lower court, cited with approval and discussed the leading cases relied upon by the contending parties in our instant case. Upon the question involved, the Superior Court said: "In the present case the sale was not only ordered and made, but was also confirmed before the expiration of the two years' period fixed by the existing statute, and the appellee's debt was one of the debts scheduled in the petition for the order of sale. These facts bring the case within the rule thus stated in Arndt's Appeal, 117 Pa. 120: 'The rights of the respective parties are fixed by the confirmation of sale. Lien creditors who were such at that time are entitled to their respective shares of the fund realized, and delay of the court in decreeing distribution cannot deprive them of their rights. If there is any question as to the lien of a debt or whether it is barred by the statute of limitations, the status of the claim at the time the sale was confirmed must determine it. Whether it be a debt of record or not, if it was then a lien on the land sold and was not then barred by the statute of limitations, it is entitled to participate in the distribution of the fund, provided it is not all exhausted by prior liens. . . . The fact that the two years' limitation period expired three days after the decree of confirmation and before the full consummation of the sale by payment of purchase money and delivery of deed, furnished no ground for vacating that decree.' It follows that the court was right in setting aside the vacating decree thus inadvertently made and reinstating the decree of confirmation."

In Wolff's Estate, 52 Pa. Superior Ct. 241, the controversy was concerning the effect of a sheriff's sale, which, of course, differs from an administrator's sale, in that it is complete and final without confirmation. The Superior Court there held: "The purchaser at the sheriff's sale took the land discharged of all the liens, which were accordingly transferred to the fund realized from the sale. . . . The claims of the appellees were liens upon the land at the time it was sold by the sheriff under the proceeding upon the mortgage, the lien of the debts was divested by that sale and the appellees were entitled to participate in the distribution of the fund realized from the sale."

In Lang's Estate, 1 Ches. Co. Reps. 287, the President Judge of said county, in passing upon a rule of court apparently similar to our own, held, as expressed in the syllabus: "The confirmation *nisi* is, without further order, an absolute confirmation, unless the court, in the exercise of a proper discretion, sustain exceptions filed thereafter."

In discussing the question, the court said:

Freeman's Estate.

"The question then arises, when are sales made by order of this court considered as confirmed? We believe the uniform rule has been to consider a sale as confirmed, without further order or decree, on the day it is presented for confirmation and confirmed *nisi*. The entry of confirmation *nisi* is intended to indicate that the sale is confirmed, unless exceptions shall be filed thereto within such time as the court, in the exercise of a proper discretion, may permit; but that, if no exceptions are filed, it stands confirmed absolutely without further action of the court. The entry made on the return of a sale is 'read and confirmed *nisi*,' and no further or other order or decree is subsequently made. The administrator or other person making sale then conveys the land thus sold to the purchaser at the time named for that purpose in the conditions or terms of sale.

"The date of confirmation, therefore, of a sale, where no exceptions have been filed, is that entered on the records on the presentation of the return; and this is the date to which interest on liens should be calculated. And such has been the ruling of this court. In Samuel Beaver's Estate, distributed in 1876, where this question arose, the court treated the date of the confirmation *nisi* as the date when the sale was confirmed and directed interest on liens to be calculated to that time. In Joseph P. Wilson's Estate, decided in 1878 and reported in 1 Chester County Reports, 60, Butler, P. J., held that all the claimants were entitled to receive on their judgments was the principal, with interest to the date when the sale of the land became absolute through confirmation by the court, and he treated the date of confirmation *nisi* entered on the records as that when the sales thus became absolute, and in David H. Branson's Assigned Estate, decided also in 1878, where the sale was under the Act of 17th February, 1876, a similar ruling was made.

"In the case under consideration, the court made no decree other than that of Jan. 28, 1879, which (there having been no exceptions to the sale) we hold to be the date of absolute confirmation. The auditor, therefore, erred in allowing interest on the judgment of David C. Chalfant after that date."

In Carver's Appeal, 89 Pa. 276, the inquiry was as to what date interest should be computed upon the claims of creditors of an assigned estate when the return of sale was confirmed *nisi* on Dec. 14, 1877, but the sale price not paid until the following April. The *nisi* confirmation on Dec. 14th contained the following qualifying fact: "10 per cent. of the purchase money to be paid in cash, the balance on the first day of April next following." There was nothing to show an absolute confirmation of sale. The court allowed interest until March 30, 1878, the date when the purchaser paid for the property.

The appellate court, in sustaining the judgment of the lower court, said:

"In the present case the order was to sell for cash. The sale was made on the 6th of December, 1877. The assignee, in fact, sold on different terms, to wit, 'ten per cent. of the purchase money to be paid in cash, the balance the first day of April next following.' The sale was so returned to the court and confirmed *nisi* 14th December, 1877. The money was paid by the purchaser and the deed delivered to him on the 30th March, 1878. The confirmation of the sale as made was a ratification of its terms with like effect as if such had been the original order of the court: Jacob's Appeal, *supra*.

"The auditor appointed to distribute the fund reported that the record showed no confirmation absolute. All it did show was the *nisi* confirmation of 14th December. He, therefore, found the passing of the title to be tantamount to entry of final confirmation and adopted that as the time when interest should cease. . . . It is thus shown that, prior to the 30th March, 1878, the purchaser was not, by the terms of his purchase, required to pay, and until

that time the purchase money, which was to take the place of the land, was not 'in the hands of an officer of the law.' Still further, the court, which is the proper tribunal to determine when the sale was confirmed absolute, has decided that to be the time. Holding, as we do, that the day of final confirmation of a sale made by an assignee is the time for interest on the liens to cease, we see no error."

The case just cited furnishes no illumination of the inquiry whether a *nisi* confirmation can be considered a final confirmation for the continuance of the liens of debts against an estate; but it does recognize a certain discretionary power lodged in the court in the interpretation of its own rules and orders for the purpose of preserving equities of creditors which, except for its exercise, would be lost.

We are, therefore, of the opinion that under said rule of court and the facts in this case, our *nisi* confirmation, when no exceptions were in fact ever filed and no additional order of court was ever required, became a final confirmation for the purpose of divesting the lien of said debts from the land and transferring said lien to the fund produced by the sale.

To hold otherwise in this particular case would be to require many petty creditors to do the vain thing of employing an attorney to bring an action against the administrator upon their claims, thereby incurring this additional expense for themselves and imposing a useless burden upon the estate to be distributed, when they, the heirs and all other interested parties, were already affected with notice that the land to which they looked for security had been converted into money ready for distribution.

A *nisi* confirmation is but a conditional confirmation. Striking out of the confirmation entered April 7, 1924, the word "*nisi*" and substituting therefor the word "conditioned," we have: "The within report presented and sales confirmed, *conditioned* that no exceptions be filed thereto within ten days."

The estate being insolvent, it follows that interest on all claims except the mortgage should be computed to the date of the confirmation of the sale: Yeatman's Appeal, 102 Pa. 297; Burkholder's Appeal, 94 Pa. 522; Wilhelm's Estate, 182 Pa. 281, 284.

We have thus far pursued the discussion upon the assumption that the *nisi* confirmation entered by the clerk on April 7, 1924, was made by direction of the court. As that was a regular session of the court, we have no reason to doubt this assumption, except for two undisputed facts incident to said entry, which at least leave the correctness of the assumption open to conjecture. One of these is, that the entry made on April 18, 1924, above recited and accredited to the court, was concededly neither directed by nor brought to the attention of the court. As a matter of fact, such *nisi* entries are often directed in open court to be entered by the clerk without the signature of the presiding judge.

In what we have said, there is no imputation of any intended irregularity upon the part of any one in relation to said order or orders.

In connection either with the regularity or legal effect of said *nisi* confirmation arises the pertinent inquiry: Did the court, on a single occasion, to wit, on April 7, 1924, with reference to the identical matter, namely, the confirmation of a return of sale, make two contradictory orders, the less formal being a *nisi* confirmation complying with our rules of court, and the other, the typewritten and formal decree already recited, decreeing that said sale be "confirmed and stand firm and stable to the purchasers thereof, their heirs and assigns forever?"

Freeman's Estate.

It follows that the court did not consciously and intentionally make two such contradictory orders. The question arising is: Which should prevail? We have already intimated that such interpretation should be given our rule as will protect the equities of decedent's creditors. As between the two orders, if one requires a construction destructive of the lien of said creditors while the other preserves said lien, we ought to adopt the one that protects the common equities of all creditors.

The exceptions to the auditor's report, as indicated, should be sustained.

### Order.

And now, May 4, 1925, the exceptions to the auditor's report, as above indicated, are sustained and the report is referred back to the auditor with direction to report a schedule of distribution in accordance herewith, without preference to claimants by reason of their not having brought action upon their respective claims after the return of sale was reported to the court.

From Otto Kohler, Meadville, Pa.