# White *versus* Crawford.

1. Where a contract provides that judgment may be entered without stay of execution after the day of payment, the legislature has not the power to grant a further stay or to suspend for an unreasonable time the execution of the judgment.

2. The Act of the 17th of February 1876, gives courts of Common Pleas power to authorize an assignee for the benefit of creditors to make public sale of the real estate of the assignor, and declares that when an order of sale is made the court may order a stay of execution on all liens that may be divested by such sale until such order shall be extended or revoked. *Held*, that the court, under this act, has no authority to order a stay of execution upon a judgment the defendant in which had expressly waived the stay of execution.

3. If it is intended that an enactment shall have any other than a prospective operation, this intent must be expressed in unmistakable language.

June 4th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lycoming county :* Of May Term 1877, No. 160.

This was a proceeding upon a judgment wherein Henry White, 3 NORRIS—28

to the use of the Savings Institution, was plaintiff, and William Crawford defendant.

On the 11th of April 1873 William Crawford gave his judgment note, under seal, to Henry White for $3000, payable one year from date, wherein he authorized any attorney to appear for him and confess judgment, "with costs of suit, release of errors, *waiver of stay of execution*, the right of inquisition on real estate and all exemption laws." The note was transferred to the Savings Institution and judgment entered thereon on the day of the date of the note.

On the 14th of September 1876, William Crawford made and delivered to John K. Crawford a deed of assignment of all his estate, in trust, for the benefit of creditors. On the 15th of the same month his assignee petitioned the Court of Common Pleas for an order of sale of the real estate of said William Crawford, in pursuance of the terms of the Act of February 17th 1876, Pamph. L. 4, entitled, "An act to enable assignees for the benefit of creditors to make sales of real estate encumbered by liens," the second section of which provides : "Whenever said court shall grant an order of sale as aforesaid, said court may order a stay of execution on all liens that may be divested by such sale by the assignee, until said order shall be extended or revoked : Provided, that it shall be lawful for said court to extend any order of sale granted as aforesaid, or to award an alias or pluries order of sale."

On the 21st of October 1876, the court, Gamble, P. J., made the following order : "After hearing and argument, the assignee having filed a bond with approved securities and all the lien creditors having had notice, and it appearing to be for the interest of all parties that the real estate should be sold, it is ordered,

"That said John K. Crawford, assignee, &c., make public sale of all the real estate described in said petition in such parcels as said assignee may deem most advantageous to all parties in interest, requiring from the purchaser or purchasers thereof twenty per cent. of said purchase-money down at the time of sale, and the balance in three equal payments at six, twelve and eighteen months from the confirmation of said sale, with interest, to be secured on the premises, except where the purchase-money exceeds $20,000, in which case the balance to be paid in four equal payments, at six, twelve, eighteen and twenty-four months, with interest. The interest on all unpaid purchase-money to be paid annually. And the court further order that the said assignee make return to this order of sale during the next regular term of court, said sale to be made at the court house during said term, after having been duly advertised according to law. All executions to be stayed on all liens upon said real estate which would be divested by such sale until otherwise ordered by the court."

[White v. Crawford.]

In compliance with this order the fi. fa., in White v. Crawford, was stayed.

The plaintiff then took this writ, assigning for error, 1, the order of sale of the real estate and the staying of the fi. fa., and, 2, the staying of the fi. fa., when the contract of the parties contained a special waiver of the stay of execution.

*Henry C. Parsons* and *Henry W. Watson*, for plaintiff in error: —Where a contract provides that judgment may be entered "without stay of execution" after the day of payment an act which grants a further stay impairs the obligation of the contract and violates the constitution: Billmeyer v. Evans, 4 Wright 324 ; Breitenbach v. Bush, 8 Id. 318 ; Lewis v. Lewis, 11 Id. 127.

The assignee of William Crawford takes his property subject to all the rights, liabilities and contracts made by him. He stands in exactly the same position, and yet notwithstanding the express agreement of his assignor, William Crawford, as contained in the single bill or judgment note before recited, the court have stayed the execution of the plaintiff and given the assignee power to sell the real estate of the defendant at a credit extending over two years from the date of said sale.

*S. T. & H. C. McCormick*, for the defendant in error.—It is true that this court has decided that the Act of May 21st 1861, Pamph. L. 770, granting an absolute stay of execution for one year on all judgments, was in conflict with the constitution so far as it related to judgments in which an express waiver of stay of execution was a part of the contract. But that act was designated as, and had the effect of, an absolute stay law, and was evidently intended to prevent the collection of debts. No such intention appears in the Act of 17th of February 1876. It is entitled "An act to enable assignees for the benefit of creditors to make sales of real estate encumbered by liens." This is not the language of a stay law.

The order directs the assignee to sell the real estate and make return to the order at the next term of court. Such sale of course is for the benefit of the lien creditors who must be paid out of the proceeds of the sale in their order. The order to sell granted to the assignee is simply another form of execution ; he is acting as an officer of the court; if he unreasonably delay a sale, any lien creditor is certainly in a position to ask the court that he be made to show cause why the sale should not be made. Does then, this change of remedy impair the obligation of the contract ?

An act which merely gives an additional remedy to enforce a contract is not unconstitutional : Taggart v. McGinn, 2 Harris 157 ; Chadwick v. Moore, 8 W. & S. 50.

[White *v.* Crawford.]

Mr. Justice MERCUR delivered the opinion of the court, October 1st 1877.

On the 11th of April 1873 the defendant executed, under seal, the note on which this judgment was entered. He therein agreed to pay three thousand dollars, one year after date. He authorized any attorney of any court of record to appear for him, and to confess judgment against him for the said sum "with costs of suit, release of errors, waiver of stay of execution, the right of inquisition on real estate, and all exemption laws." On the same day judgment was duly entered on the note.

Thus the written contract shows the defendant expressly waived all stay of execution, after the maturity of the note. The waiver was part of an entire contract. It was founded on a sufficient consideration. No policy of law forbade it. He had an undoubted right to so agree. After the expiration of the year, he could not interpose any further stay. The right of the holder to execution, became complete. It is not alleged that under any law, then existing, the order of 21st October 1876, staying execution, could be sustained. Is such a stay authorized by the Act of 17th February 1876 ? Section first of this act gives the Court of Common Pleas power to authorize an assignee, for the benefit of creditors, to make public sale of the real estate, of the assignor, "at such place and upon such terms as the said court shall direct." It further declares that after confirmation, said sale shall discharge all liens against the real estate so sold, excepting mortgages prior to other liens, ground-rents, and purchase-money due to the Commonwealth. Section two declares that when such an order of sale is made, the "said court may order a stay of execution on all liens that may be divested by such sale by the assignee until said order shall be extended or revoked." It also authorizes the court to extend an order of sale which it had granted, or to award an alias or pluries order therefor.

It is not entirely clear that the legislature intended this act to apply to cases in which the parties had agreed there should be no stay. It makes no specific reference to such cases. In Dewart *v.* Purdy, 5 Casey 113, it was said nothing but the most indubitable phraseology will induce this court to hold that the legislature intended an enactment to have any other than a prospective operation. With fully equal reason we should hold that the legislature did not intend to change the terms of an existing contract, unless the act expressed such intention in clear language. Applying that rule to the Act of 1876, it would not affect the note in question. If, however, we concede that the general terms of the act are sufficiently broad to include this judgment, then other questions arise. Is the act within the limits of constitutional power ? Can the legislature thus impair a contract ? When the parties have not specifically contracted in regard to the remedy for the collection

[White *v.* Crawford.]

of a debt, it must be conceded that the legislature may pass laws altering, modifying or taking away an existing remedy for the recovery thereof, without violating the provision of the constitution which forbids the passage of laws impairing the obligation of contracts. This is because a distinction is recognised between the obligation of a contract and the remedy given by the legislature to enforce that obligation. It was said by Mr. Chief Justice Marshall, in Sturges *v.* Crowninshield, 4 Wheat. 122, to be a distinction which "exists in the nature of things." Although a right without some remedy for its enforcement would be of no practical value, yet nevertheless they are distinct things.

Usually parties do not contract as to the manner of ascertaining the damages, nor as to their measure, in case of a failure to fulfil the substantial obligations of an agreement. They leave these questions to be settled in the manner provided by general law. Yet when they do contract in regard to them, the contracts become of binding force, and the courts must so recognise them. Thus in a contract for the construction of a railroad, full effect is given to a clause providing that the decision of the chief engineer shall be final and conclusive in all matters of dispute arising between the parties to the agreement as to the proper execution of the work. In like manner, an agreement liquidating the amount of damages in case of a non-performance of the contract, will be enforced.

Whenever the parties have made the legal remedy the subject of their contract, that portion of their contract is as far removed from subsequent legislative action as the main obligation of their contract. Where legislative power is unable to impair the one, it cannot the other: Billmeyer *v.* Evans *et al.*, 4 Wright 324; Breitenbach *v.* Bush, 8 Id. 313; Lewis *v.* Lewis *et al.*, 11 Id. 127.

Conceding that the legislature may lawfully change the mode of selling the defendant's real estate; that it may authorize it to be sold by virtue of an order to the assignee, instead of by writ to the sheriff; that it may authorize a stay of proceedings on the latter, while the power of sale is being exercised on the former, without infringing on that clause in the constitution which denies it the power of impairing a contract, it by no means follows that it can postpone the collection of the debt for an unreasonable time.

This brings us to a consideration of the terms and effect of the order made by the court. It declares that the purchaser shall be required to pay twenty per cent. of the purchase-money at the time of sale, "and the balance in three equal payments, at six, twelve and eighteen months with interest." If, however, the bid should exceed twenty thousand dollars, the excess above the down payment shall be in four equal payments, at six, twelve, eighteen and twenty-four months with interest.

The record before us fails to show the relative position of the plaintiff's judgment in the order of liens. In view, however, of

the time given to the purchaser to make his payments, we think the action of the court in thus staying the plaintiff in the collection of his debt, is an abuse of the power intended to be given by the Act of Assembly. We discover nothing in the act indicating a purpose to postpone the collection of judgment liens for such an unreasonable time. The object is to pass to the purchaser a title as free and unencumbered as if acquired by virtue of a sheriff's sale, made on execution issued upon a judgment lien; and to stay execution while the assignee is proceeding to sell; but not to unduly postpone the time for payment of judgment liens thereby divested. We think the learned judge misapprehended the design of the statute and gave to it an improper effect. The order staying execution must therefore be reversed.    Order reversed.