## Tomlinson's Appeal.

1. Where a sale is made under the provisions of the Act of February 17th 1876, entitled "An act to enable assignees for the benefit of creditors, to make sales of real estate encumbered by liens," the date of the confirmation of the sale is the day when the land is converted into money, and the liens thus discharged must be paid according to their priority on that day.

2. The interest on the liens thus discharged ceases on the day of the final confirmation of the sale. Carver's Appeal, 8 Norris 276, followed.

May 9th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Lancaster county*: Of May Term 1879, No. 36.

Appeal of George Tomlinson from the decree of the court, distributing the balance in the hands of the assignee of George Heiss and wife.

On January 17th 1873, the judgment bond of George Heiss to Lewis E. Harple for $1000, was entered in the Common Pleas of Lancaster county, and became a lien upon his real estate. On April 7th 1877, Heiss made an assignment to Tomlinson for the benefit of creditors.

On October 15th 1877, the assignee applied to court for an order to sell all the real estate assigned to him by Heiss, under the provisions of the Act of February 17th 1876. The court granted the order of sale, and directed that the property should be sold on November 15th 1877; that ten per cent. of the purchase-money should be paid in cash on the day of sale, and that the balance of the purchase-money should be paid on April 1st 1878. The assignee offered the real estate for sale on November 15th 1877, and the written conditions of sale provided that ten per cent. of the purchase-money should be paid in cash, or by a promissory note at thirty days, with security to be approved by the assignee; that the balance of the purchase-money should be paid on April 1st 1878, and that possession and a deed of conveyance of the property would be given on April 1st 1878, on payment of the purchase-money. The assignee sold the real estate on November 15th 1877, for $14,665, and on November 19th 1877, made return to the court that he had sold the same for that price, payable as in the order of sale mentioned, and asked that the sale be confirmed. Under the rule of court, the sale was confirmed absolutely on December 4th 1877. The real estate so sold was conveyed by the assignee at the time mentioned in the conditions of sale, and the purchase-money was paid in accordance with the terms named in the same. Under these circumstances, Harple claimed to be allowed to participate in the proceeds of the real estate as a judgment-creditor having a lien. His claim was resisted by other judgment-creditors, on the ground that the five years during which his judgment was a lien on the real estate expired on January 17th

1878; that the deed for Heiss's property was not delivered unti!
April 1st 1878, 'and that as the judgment had not been revived, it
could not come in upon the fund.

The auditor reported that a revival of Harple's judgment was
not necessary, and awarded him the balance due on his judgment,
as a lien with interest to April 1st 1878, the day of the payment
of the purchase-money. Tomlinson, a judgment-creditor, excepted,
alleging that the auditor erred in making the award to Harple, and
in allowing interest to April 1st 1878. The court, Patterson, J.,
dismissed the exceptions and confirmed the report. From this
decree this appeal was taken.

*E. H. Yundt* and *D. G. Eshleman*, for appellant.—All sales
upon time under an order of court are confirmed, subject to the
payment of the purchase-money. That is the final act of confirma-
tion: Demmy's Appeal, 7 Wright 168. A sale under an order of
the Orphans' Court, does not work a conversion: Leshey *v.* Gard-
ner, 3 W. & S. 314; Overdeer *v.* Updegraff, 19 P. F. Smith 118;
Erb *v.* Erb, 9 W. & S. 147; Biggert's Estate, 8 Harris 17; Ful-
ton's Estate, 1 P. F. Smith 204; Hall *v.* Benner, 1 P. & W. 402.

A sheriff's sale works a conversion, because it is presumed in law
to be a cash sale. This being a time sale, there could be no con-
version until the payment of the purchase-money. If there was a
conversion, the money was in the hands of the law and could not
bear or produce interest. But, in any event, whether this sale fol-
lows the analogy of sheriffs' or Orphans' Court sales, interest
ceases on the day of the sale.

*J. Hay Brown*, for appellee.—These sales under the Act of
1876, are but substitutes for sheriffs' sales.

In the case of a sheriff's sale the rights of creditors are fixed by
their status on the day of sale. If they have liens on the day of
sale they are to be paid out of the proceeds. They can no longer
look to the land. By a sheriff's sale the proceeds are substituted
for the land, and no revival is necessary : Price on Limitations and
Liens 282; Commonwealth *v.* Gleim, 3 P. & W. 417; Custer *v.*
Detterer, 3 W. & S. 28.

By a judicial sale of land, the price, as *money*, becomes to all
intents and purposes, the *substitute* and representative of the land.
*All liens* then existing and which are, by law, payable out of the
money produced by the sale, are discharged: Abbott *v.* Remington,
4 Phil. 34.

On a sheriff's sale of land by execution, the date of the sale is
the point of time to which all the lien debts are to be computed.
That date closes the accounts between the lien-creditors and the
debtor, so far as respects the fund raised; the money is by the sale
substituted for the land. The land is discharged of all debts on

existing liens: Walton *v.* West, 4 Whart. 221; Hahn *v.* Smith, 1 P. & W. 484; Small's Appeal, 12 Harris 399.

Interest on all judgments against real estate sold by an assignee under the Act of 1876, is to be computed to the day the purchase-money is paid. Livingston, P. J., in Haverstick *v.* Swarr Lancaster bar, June 16th 1877.

Mr. Justice Mercur delivered the opinion of the court June 2d 1879.

This is a case of distribution of the proceeds of a sale of real estate, made by an assignee in trust for the benefit of creditors, under the Act of 17th February 1876. The court ordered the sale to be made on the 15th November 1877. On the 19th of same month, the assignee made return that he had sold as directed by the order, and the sale was confirmed *nisi.* On the 4th of December following, it was confirmed finally.

The first assignment presents the question, whether a judgment, which was a lien when the sale was made and when it was confirmed, and was then entitled to be paid out of the proceeds, loses its right thereto by reason of the five years from its entry having expired after the confirmation, but before the payment of the purchase-money and delivery of the deed? This involves a consideration of the act under which the sale was made. It declares: "the sale or sales, after being confirmed by the said court, shall discharge all liens against the real estate so sold, excepting that where the lien of a mortgage on real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground-rents and the purchase-money due the Commonwealth; the lien of such mortgages shall not be destroyed or in any way affected by any sale made by virtue or authority of any order of sale, made under the provisions of this act; and the proceeds arising therefrom shall be appropriated to liens extinguished by virtue of such sale, according to their priority." It is conceded that the judgment held by the appellee, Harple, was a lien at the time of the sale and of the confirmation, and that the five years from its entry did not expire until the 17th of January following. Inasmuch, then, as the statute expressly declares that the sale, after confirmation, "shall discharge the lien," and the proceeds of the sale "shall be appropriated to liens extinguished by such sale according to their priority," the judgment in favor of Harple is clearly entitled to be paid out of the fund produced by the sale. · "After being confirmed," does not mean some indefinite time in the future, but is equivalent to saying "on confirmation." That, then, is the time at which the lien is extinguished, and its right to the proceeds of the sale attaches. As to lien-creditors, the land is converted and the proceeds take the place of it. No revival of the judgment afterwards could create a new lien, either on the land sold or on the proceeds thereof.

The subsequent expiration of the five years, from the rendition of the judgment, in no wise impaired its right to the money.

The second assignment is to the allowance of interest, out of the proceeds of sale, on the liens, to first of April 1878.

The order of sale directed ten per cent. of the purchase-money should be paid on the day of sale, and the residue on the first of April following. The notice of sale stated possession, and deed of conveyance would be given on the first of April, on payment of the purchase-money. By reason of this postponement of payment, the court allowed interest on the liens until that time. The precise question was considered and ruled in Carver's Appeal, 8 Norris 276. It was there held that the interest should be computed to the time of final confirmation only. It is true, in that case the confirmation was postponed until payment of the purchase-money; yet we held it was the confirmation of the sale, and not the payment of the purchase-money, which determines the time when interest shall cease on liens paid out of the proceeds.

The Act of 17th February 1876, was not intended to unduly postpone the collection of liens on real estate. Its title is "An Act to enable assignees for the benefit of creditors, to make sales of real estate encumbered by liens." The preamble states the evils which the act was designed to cure, in these words, " Whereas, it frequently occurs in assignments for the benefit of creditors where the assignor is the owner of a number of tracts of land, encumbered to such an extent that it is impossible to ascertain definitely whether a sufficient amount can be realized to discharge all the liens whereby the titles made by the assignees are regarded as doubtful, and the assignees are thereby unable to make advantageous sales of said real estate; therefore, *be it enacted*, That in all assignments for the benefit of creditors, it shall and may be lawful for the several courts of Common Pleas of this Commonwealth, upon application of the assignees of insolvent debtors, setting forth that the personal estate is insufficient for the payment of the debts, and the real estate encumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens as aforesaid, to grant an order, where the said court shall deem it for the manifest interest of all parties, authorizing and empowering the said assignees to make public sale of such real estate, or so much thereof as shall be deemed necessary, at such place and upon such terms as the said court shall direct." The act further provides, inter alia, "that the court shall require such proof of notice of such intended application to have been given to the lien-creditors or their attorneys, as said court shall deem sufficient to give said lien-creditors an opportunity to be heard, touching said order of sale." It is true, during the pendency of the order of sale, the act declares the court may order a stay of execution on all liens that may be divested by such sale. There is

[Tomlinson's Appeal.]

a manifest propriety in exercising this power, when the main object of a sheriff's sale may be attained by means of a sale by the assignee. While the latter is proceeding to execute the order, he should not be embarrassed by the issuing of executions. Thus, it is shown by this, and portions of the act previously cited, and expressly declared in White *v.* Crawford, 3 Norris 433, "the object is to pass to the purchaser a title as free and unencumbered as if acquired by virtue of a sheriff's sale made on execution issued on a judgment-lien; and to stay execution while the assignee is proceeding to sell; but not to unduly postpone the time for payment of judgment-liens thereby divested." The "terms" of sale which the court may direct, must be subordinate to "the manifest interest of all parties." The act requires notice to the lien-creditors and an opportunity for them to be heard, before the sale is ordered. If it be so ordered as to postpone the payment of the liens, and deprive the owners of interest thereon, for a time longer than may reasonably be required to make distribution of the fund, it cannot well be said that the sale is for the "manifest interest" of such creditors. It is not necessary for the purpose of discharging the liens or of giving an undoubted title to the purchaser. It would, therefore, be unwarranted by the statute. The payment of so much of the purchase-money as will be sufficient to satisfy the liens divested by the sale, should be required at the time of the confirmation or soon thereafter. It follows that the decree of distribution in this case is correct, except in so far as interest was allowed on the judgment-liens after the time of final confirmation of the sale. To correct this only it must be reversed.

Decree reversed, and record remanded, with instructions to decree distribution conformably with this opinion. It is further ordered, that the costs of this appeal be paid out of the fund.