## Assigned Estate of Andrew J. Myers. Appeal of Andrew J. Myers, Edmund B. Myers and Dr. J. M. Gross.

*Assignment for creditors—Sales under the act of February 17, 1876—Discretion of court.*

An assignee's sale under the act of February 17, 1876, by order of the court, for the discharge of liens, stands upon an intermediate ground between a sheriff's sale which cannot be set aside for mere inadequacy of price and an orphans' court sale which may be set aside for inadequacy of price, without more.

The right of lien creditors to collect their claims by execution was not taken from them by the act of 1876 except in cases where the estate " is incumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens," and then only " where the court shall deem it for the manifest interest of all parties."

The reason for ordering a sale which will discharge liens is that a better price may be obtained by enabling bidders to know what they are buying. The supervision to be exercised by the court after the sale is in the interest of all parties, but the limited purpose of the act should be kept in view.

On an application to set aside an assignee's sale, it appeared that there was no fraud or irregularity in the sale and the land brought a fair price. An offer to bid $10.00 per acre more at another sale was made by a trustee for the wife of the assignor, to whom a judgment had been confessed before the assignment, under which all the personal property was sold. The fund realized was sufficient to pay all judgments prior in lien to that of the trustee. *Held,* that the court committed no error in refusing to set aside the sale.

Argued May 17, 1899. Appeal, No. 156, Jan. T., 1899, by Andrew J. Myers et al., from order of C. P. York Co., discharging rule to set aside assignee's sale. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to set aside an assignee's sale.

The court discharged the rule, STEWART, J., filing the following opinion:

I am not convinced that this sale should be set aside. The only technical reason for so doing is an irregularity in the conduct of the sale, the allegation that Dr. Gross, the holder of the

last judgment, was misled to his injury by the statement of
Edmund B. Myers, one of the assignees, that the property would
not be sold for less than $90.00 per acre. Had this been made
on the day of sale I would feel compelled to set it aside, much
as such a course would be against the best and safest rules on
the question of setting aside such sales. But that statement
was made almost a month before the sale, before December 6,
and the sale took place on December 31. Dr. Gross was present
on the ground at 12 o'clock noon on the day of the sale, which
took place in the afternoon, and so far as appears made no ar-
rangement or inquiry looking to the protection of his judgment.
This being the case, the court is not moved to undo the sale on
this account and involve the purchaser and those who have acted
upon the faith of the sale in consequent loss against which the
court would have no authority to protect and no power to repair.
I am not convinced that the sale was made in undue haste.
All the notice was given that the law requires. Besides, the
assignment came late in the year, on December 1, and to obtain
the best price and enable parties to make the necessary arrange-
ments for the change of possession, tenants, and to pay the pur-
chase money April 1, the usual time for such transfers of title,
the sale had to be made promptly. The testimony shows, and
I think common experience would suggest, that the sale of a
large farm such as this was, after January 1, would not be as
advantageous to the vendors as before. It is perhaps a rare
thing in this county for any but the sheriff to sell farms between
January 1 and April 1. Farms are usually sold in the fall of
the year so that farming arrangements for the next year may be
completed before January 1. In view of these well known facts
I am not convinced that the sale was unnecessarily hurried.
Had it not been made when it was, the assignees would prob-
ably have been obliged to carry the property over until next
fall, with a consequent increase of liabilities to be met in the
future.

Dr. Gross has offered to give a bond conditioned to bid at
another sale at least $92.00 for the property. If this were an
orphans' court sale, and he an heir or creditor, this would move
the court to order a resale, but it is not, and the rule is differ-
ent, and by these rules the court is bound: Snyder's Estate, 2
Pa. C. C. R. 546. A sale by an assignee under the act of Feb-

ruary 17, 1876, is a substitute for a sheriff's sale, and must be regulated more nearly by the rules applicable to such sales. One unvarying rule is that mere inadequacy of price is not sufficient ground for setting aside a sheriff's sale: T. & H. Pr. sec. 1269, and cases cited.   Here there is no fraud or irregularity in the sale.   Under such circumstances it is said with reference to sheriffs' sales that inadequacy of price is not sufficient to set aside the sale even where security is offered that a higher bid will be secured at another sale: Whitacre v. Pratt, Dist. Court, Phila., cited in 1 T. & H. Pr. p. 728, note 1. This case stands on a different footing from Kast's Assigned Estate, 7 York Legal Record, 93.   There a bond was filed agreeing to bid thirty-three per cent (the court said twenty-five per cent) more than what the property sold for, and there were irregularities in the sale.   On the question of value it may be said, judging from the testimony, that the property brought a fair price.   The purchaser possibly has acquired some advantage by his purchase, but who would become a purchaser if he did not believe he was getting a bargain, and how would property be converted and creditors satisfied, if purchasers were compelled to pay the last cent of value in property offered at assignees' sales?   And now, February 27, 1899, the rule to set aside the sale is discharged.

*Error assigned* was the order of the court.

*Nevin M. Wanner,* for appellants.

*Edward Chapin* and *Henry C. Niles,* with them *Horace Keesey,* for appellees.

Opinion by Mr. Justice Fell, July 19, 1899:

From Weitzell's Lessee v. Fry, 4 Dallas, 218, to Trust Co. v. Kelly, 185 Pa. 131, it has been uniformly held that inadequacy of price, without more, is not sufficient ground for setting aside a sheriff's sale.   The principles on which this line of decisions rests, as announced in Young's Appeal, 2 P. & W. 380, were restated in the opinion in Stroup v. Raymond, 183 Pa. 279, in which it is said that the rule that sheriffs' sales should not be set aside for inadequacy of price, where there has been

no irregularity and no misapprehension as to material facts, is founded on the soundest reason and should be adhered to. A different rule obtains where sales are made under proceedings in the orphans' court, and the power of that court to set aside a sale of real estate, made in pursuance of its order, for inadequacy of price, is indisputable. In such cases the purchase is not complete until confirmed, and the purchaser is regarded as standing in the situation of a bidder at a master's sale in chancery; his bid is but an offer to the court, which may be accepted or not in its discretion: Demmy's Appeal, 43 Pa. 155; Hamilton's Estate, 51 Pa. 58; Brown's Appeal, 68 Pa. 53; Bower's Appeal, 84 Pa. 311.

An assignee's sale under the act of February 17, 1876, by order of the court, for the discharge of liens, stands upon an intermediate ground. The purpose of the act is to enable assignees for the benefit of creditors to sell, discharged of liens not excepted by its provisions, when the real estate assigned is so incumbered that it is difficult to determine the amount of the liens, and a bidder cannot know in advance of the sale whether he will get a clear title. In such a case it is manifestly in the interest of all that a sale discharged of liens should be made, and it is on this ground only that the intervention of the court should be had. In many cases which have been brought to our attention there has been an improper use of the act to the prejudice of lien creditors. Sales under the act are judicial sales, and interest on liens ceases on the date of confirmation: Carver's Appeal, 89 Pa. 276; Tomlinson's Appeal, 90 Pa. 224. Delay in distribution or the imposition of terms which postpone payment may seriously affect the rights of lien creditors. It is not the purpose of the act to take from them the right to collect their claims by execution in order that the general creditors or the assignor may be benefited; and it is not taken from them at all except in cases where the estate " is encumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens," and then only " where the court shall deem it for the manifest interest of all parties." In speaking of a sale under the act of 1876 it was said in White v. Crawford, 84 Pa. 433, " The object is to pass to the purchaser a title as free and unencumbered as if acquired by virtue of a sheriff's sale made upon execution upon a judgment lien."

This object should be kept in view in granting or refusing an order for sale, and in confirming or setting aside a sale made under the act. The reason for ordering a sale which will discharge liens is that a better price may be obtained by enabling bidders to know what they are buying. The supervision to be exercised by the court after the sale is in the interest of all parties, but the limited purpose of the act should be kept in view. There are not the same interests to be protected as in an orphans' court sale, and on the other hand the rule that a purchaser has a right to his bargain does not apply with the same force as in the case of a sheriff's sale.

In this case the discretion of the court was exercised within the lines indicated. There was no fraud or irregularity in the sale, and the land brought a fair price. The offer to bid $10.00 per acre more at another sale is made by the trustee for the wife of the assignor, to whom a judgment was confessed before the assignment, under which all the personal property was sold. As the fund realized is sufficient to pay all judgments prior in lien to hers, and the increase would produce nothing for the unsecured creditors, she is the only party to be benefited by a resale, and the other judgment creditors and the purchaser may be prejudiced by the delay.

The order of the court is affirmed at the cost of the appellant.