# Wolff's Estate.

*Decedents' estates—Lien of debts—Bringing suit within two years—Fraudulent conveyance—Setting aside conveyance—Raising of fund—Distribution.*

1. Where a person makes a conveyance of land in fraud of his creditors, and the fraudulent grantee mortgages the land to an innocent mortgagee, and thereafter and within two years after the death of the grantor, the land is sold under foreclosure proceedings for an amount in excess of the mortgage, such excess is distributable among all of the creditors of the deceased grantor although some of them had not brought suits within two years of the decedent's death. The foreclosure sale discharged the lien of all of decedent's debts on the land, and the lien was transferred to the fund. No suit or process was necessary to enforce or continue such lien.

2. Where, in such a case, the payment of the excess over the mortgage to the decedent's executor rather than to the fraudulent grantee, mortgagor, was brought about by a bill in equity filed by certain of the creditors, the fund will be distributable, after deduction of the costs of the equity suit, amongst all of the creditors, although some of them may have refused to join in the equity suit.

Argued Oct. 11, 1912. Appeals, Nos. 279 and 280, by Third National Bank of Philadelphia and Corn Exchange National Bank of Philadelphia, from decree of Q. S. Phila. Co., April T., 1911, No. 246, sustaining exceptions to adjudication in Estate of George S. Wolff, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY and PORTER, JJ. Affirmed.

Exceptions to adjudication.

ANDERSON, J., filed the following opinion:

The facts in this case are, that the decedent, who died June 20, 1908, had in his lifetime conveyed certain real estate to Cora E. Copperfield, the title to which through an intermediary finally passed to her husband, James D. Copperfield. The latter created a mortgage of $20,000 on the premises, first paying off a prior mortgage of $18,000, and foreclosure proceedings against Copperfield as the

owner having been brought in C. P. No. 2, on his mortgage, the real estate was sold at sheriff's sale, the deed therefor being acknowledged January 24, 1910; and after the payment of the mortgage debt, the fund was left in the sheriff's hands, which presumptively belonged to defendant in that action. Subsequently, certain of the creditors of the decedent, the Corn Exchange National Bank, Merchants' National Bank and F. Wayland Ayer, being of opinion that the conveyance of the real estate to Copperfield had been in fraud of their rights, joined with the executor of the decedent in a bill in equity in C. P. No. 3 (afterwards transferred to C. P. No. 2) against Copperfield, in which they sought to have the surplus from the sheriff's sale paid over to the estate of the decedent, so that their claims might be paid thereout. As these proceedings were necessarily expensive, they wrote to other creditors, including the attorney of the Third National Bank, asking them to join in the proceedings. Counsel for that bank after consultation with his client, sent word that they declined to join in these proceedings on two grounds: first, that from his knowledge of the facts of the case, he was of the opinion that no recovery could be had and, secondly, that it was not necessary for all creditors to join in order that recovery might be had. The effect of the bill was that the court of common pleas sent the fund to an auditor for distribution. At that audit all the creditors of decedent appeared and proved their claims. The auditor decided against Copperfield and awarded the balance of fund, after payment of costs, to the accountant, and it is now before us for distribution as part of the estate of the decedent.

At the hearing before the auditing judge claims were presented, inter alia, on behalf of the First National Bank of Philadelphia (into which the Merchants' National Bank had become merged), the Delaware County National Bank of Chester and F. Wayland Ayer, for a pro rata share of the fund now for distribution. To this it was objected, on behalf of the Third National Bank, that the

fund being the proceeds of the sale of real estate, the only creditors entitled to distribution were those who had brought an action to continue their liens against the real estate within two years of decedent's death. The Third National Bank and the Corn Exchange National Bank had brought such action. F. Wayland Ayer and the Merchants' National Bank had not brought such action, but with the Corn Exchange National Bank had, as above stated, intervened in the bill in equity which produced this fund. And the Delaware County National Bank neither intervened nor brought an action to continue the lien of its claim. To this objection of Third National Bank it was replied that at the date of the sheriff's sale, January, 1910 (decedent having died June 20, 1908), all debts of decedent were liens upon his real estate and that by said sale all liens subsequent to the mortgage, whether debts of record or not, became discharged by the sale and seated upon the fund; that the rights of the lien creditors became fixed upon the confirmation of said sale, and could not be affected by any subsequent action or nonaction on the part of the creditors. And they went further, and claimed that as the Third National Bank refused to join in the bill in equity, it is not entitled to participate in the distribution of the fund realized thereby.

The learned auditing judge on the authority of Shorman v. Bank, 5 W. & S. 373, decided that those creditors who had not commenced an action within two years of decedent's death, had lost their lien on the fund, and that it must be distributed only among those who had brought such action. The effect of this decision is that the Third National Bank, which refused to join in the proceeding that produced the fund in court, is paid a dividend on its claim, while the First National Bank and F. Wayland Ayer, who were active in producing the fund, are deprived of any share therein. Such a result, of course, is shocking to the conscience of a chancellor, and is not to be tolerated unless escape therefrom is impossible.

The first point to be considered is as to the right to

participate on the part of those creditors whose claims were rejected for the reason that they had not commenced an action within the two-year limit. The case of Shorman v. Bank, 5 W. & S. 373, upon the authority of which they were excluded, is parallel with the present in so far as the fraudulent conveyance and its effects is concerned. It is authority for the position that, in spite of the conveyance the debts of the decedent became liens upon the estate so conveyed, just as if he had died seized of it and that the limitation provided by the act should be applied in the same manner and to the same extent as if he had died seized of the estate. But the distinction between that case and the present is that the bank had no lien upon the land at the time it was converted by the sheriff's sale, while in the present case, at the time of the confirmation of the sale a lien still existed.

The auditing judge also cited, in support of his opinion, the case of Dolan's Est., 19 Pa. Dist. Rep. 862, and 231 Pa. 180. In that case, however, the sale arose out of a partition of real estate, and, to quote the language of the auditing judge, cited with approval by the Supreme Court, "If there had been no sales, but instead a division in kind, it cannot be doubted that the holdings of the estate of Clara A. Dolan would be in fact real estate. Why, therefore, should a sale create anything more than a change in form, though not in substance. It is simply to give one his share in severalty, which, prior to that, he held in common; in no sense is it for the purpose of creating a fund for the payment of debts." These cases, therefore, being clearly distinguishable from the one before us, are of no binding authority in this controversy. On the other hand, we have a line of cases where land is sold by order of court for payment of debts, and the sale confirmed within the time limit, in which case the lien of debts on the land is discharged and thrown upon the fund, and is unaffected by subsequent delay in distribution. As said by Mr. Justice STERRETT in Arndt's App., 117 Pa. 120, "The rights of the respective parties are fixed by the confirmation

of sale. Lien creditors who were such at that time, are
entitled to their respective shares of the fund realized,
and delay of the court in decreeing distribution cannot
deprive them of their rights. If there is any question as
to the lien of a debt, or whether it is barred by the statute
of limitations, the status of the claim at the time the sale
was confirmed must determine it. Whether it be a debt
of record or not, if it was then a lien on the land sold and
was not then barred by the statute of limitations, it is en-
titled to participate in the distribution of the funds." And
so in the case of sales by assignees for the benefit of
creditors. The date of the confirmation of the sale is the
day when the land is converted into money and the
liens thus discharged must be paid according to their
priority on that day: Tomlinson's App., 90 Pa. 224. And,
as said in Arndt's App., 117 Pa. 120, this is because such
sales are similar to sales by the sheriff under process of
a court of law, where it has been uniformly held that the
rights of lien creditors must be determined as they were
at the time of the sale. The liens being divested by the
sale, lien holders are thrown upon the proceeds, Doug-
lass's App., 48 Pa. 223, and no lien or right thereto can
be afterwards acquired or lost.

It is true that the surplus of sheriff's sales of land is to
be distributed as land, but this clearly applies to the parties
who claim by descent; it is to go to them as heirs and not as
next of kin.

And the reasoning which holds that where land has
been converted into money, by law the liens thereon are
seated upon the funds, according as they exist at the time
of the sale, irrespective of the time of distribution, applies
certainly with equal force in a case like the present, where
the only practical way by which the debts can be paid out
of the land was by filing of the bill in equity and not by
obtaining a judgment against the decedent. As long
as the land stood in the name of Copperfield no judgment
against the executor would have bound it. As said by
Mr. Justice PAXSON in Fowler's App., 87 Pa. 449, "It

was urged by the appellee that they should have brought
suit at law against the administrator, if there be one, and
if not they should have raised up an administrator for
that purpose.   Such a proceeding would have been a
vain thing, and lex neminem cogit ad vana seu inutilia."

We are, therefore, of opinion that the effect of the
sheriff's sale was to discharge all liens existing at the time,—
liens for debts of the decedent not of record as well as liens
of debts of record,—and to seat these liens upon the funds.
The exceptions of the excluded creditors must be sustained.

Exceptions were also filed to the participation in the
distribution on the part of the Third National Bank,
founded upon the fact that the Third National Bank had
refused to join in the bill in equity by means of which the
fund was produced.   The title to the real estate was not
in the name of the decedent but in that of the fraudulent
vendee and if no suit had been brought, this fund would
have been paid to the owner of record as a matter of right.
The creditors who were successful in practically setting
aside the sale from the decedent to his fraudulent vendee,
asked the Third National Bank to join with them, thereby
sharing in the expense and risk incident to such a proceed-
ing.   This the Third National Bank declined to do on the
ground that they would not be warranted in going to any
expense in the suit against the fraudulent vendee, stating
that their counsel did not believe that there was any possi-
bility of recovery being had and because he saw no neces-
sity of making all creditors parties to the bill at that time.
Because of this action, the exceptants claim the Third
National Bank should be barred from participation in
the fruits of the victory.

This position seems to be sustained by the language of
the Supreme Court in Fowler's App., supra, where a bill
in equity had been filed by a creditor against a fraudulent
vendee.   In sustaining the right of the creditor to bring
such a suit, Mr. Justice PAXSON says: "The only remain-
ing question is as to the form of the decree.   The deed in
controversy is void only as to the complaining creditors.

The quiescent creditors, if there be any, cannot take advantage of this proceeding. This is. settled by Shulze's App., 1 Pa. 251, and Tomb's· App., 9 Pa. 61. It is ap-- parent then that after paying first, the costs· of: this pro-- ceeding, and second, the respective claims· of the complainants, the real estate in question ought. to·be·released from the injunction."

This ruling, however, would seem to have been modified: in the more recent case of Schwartz v. Oil Company, 164 Pa. 415, where a fund was created by an appeal made by certain creditors only, and it is held by the Supreme Court in an opinion by Mr. Justice WILLIAMS, that all creditors were entitled to share in the funds and not merely the appellees. "We agree with the learned auditor that it (the fund) belongs to the creditors and not alone to such of their number as except to the decree of the court below and brought their appeal into this court. Any of them had the right to appeal. Such of them as did so expended their money for the common benefit of the class to which they belonged and are entitled to be reimbursed before distribution is made," and, after holding that the cost should be repaid to the creditors who made the appeal, the court held "the remainder of the fund should be distributed pro rata among the creditors named in the auditor's report now before us."

The majority of the court are of the opinion that the later case, while not in terms overruling Fowler's appeal, is more in accordance with equitable principles and should be followed in the present case. This exception is, therefore, dismissed.

The adjudication will accordingly be modified and the fund distributed in accordance with this opinion.

*Error assigned* was in sustaining exceptions to adjudication.

*Humbert B. Powell*, with him *James McMullan* and *H. Gordon McCouch*, for appellant.—The fund here in

question being realty, it would seem to follow that those creditors who held liens or have preserved them by complying with the act of assembly are the ones first entitled to be paid: Shorman v. Bank, 5 W. & S. 373; Dolan's Est., 231 Pa. 180; Arndt's App., 117 Pa. 120.

That the equity proceeding in the common pleas court was not "an action" within the meaning of the act of assembly, is, we submit, settled by the decisions holding that the words of the act are strictly technical and according to the well-established canons of interpretation should be received in their technical signification: Bindley's App., 69 Pa. 295; Craig's App., 5 W. N. C. 243; Emerick's Est., 172 Pa. 191; Smith v. Ribblett, 233 Pa. 300; Bartley's Est., 7 Pa. Dist. Rep. 36.

*Henry T. Dechert*, with him *Charles C. Norris, Jr.*, for appellee.—The sheriff's sale discharged the lien of the unrecorded debts of the decedent, and they became and remained chargeable upon the fund: Douglass's App., 48 Pa. 223; Tomlinson's App., 90 Pa. 224; Arndt's Est., 117 Pa. 120; Ramsey's App., 4 Watts, 71; Pennock v. Hoover, 5 Rawle, 291; Yearsley v. Flanigen, 22 Pa. 489; Young v. Elliot, 2 Phila. 352; Beard v. Lofton, 102 Indiana, 408 (2 N. E. Repr. 129); Grider v. McClay, 11 S. & R. 224; Matlack v. Roberts, 54 Pa. 148.

Under the facts of this case, the appellants are not in a position to object to the claims of appellees: Fowler's App., 87 Pa. 449.

OPINION BY PORTER, J., February 27, 1913:

The opinion filed in the court below by Judge ANDERSON clearly states the facts and fully vindicates the decree from which these appeals are taken. That opinion will appear in the report of this case and renders it unnecessary that we should discuss at length the questions involved. A judicial sale, for the purpose of paying debts, discharges all liens which are then due and payable, save those protected by statute. There is in this respect no distinction

between a sale by the sheriff and a sale under an order of the orphans' court for payment of debts: Ramsey's Appeal, 4 Watts, 71. The deceased had conveyed his land to Copperfield in fraud of the rights of his creditors, but while that conveyance was void as against the creditors it was entirely valid as against the decedent and his heirs. Copperfield had mortgaged the land to one who had advanced money without notice of the fraudulent character of his title, and the title of the mortgagee was good as against the creditors of Wolff. Wolff having died, the property was, within two years after his death, sold by the sheriff, under proceedings upon the mortgage, for an amount more than sufficient to pay the claim of the mortgagee. The court of common pleas, under proper proceedings, held that the title of Copperfield was fraudulent as against the creditors of Wolff, but that the mortgagee had advanced money and taken the mortgage in good faith, without knowledge of the fraud, and decreed that the mortgage should first be paid out of the proceeds and that the balance of the fund should be paid to the executor of Wolff, the accountant. The land, at the time of the confirmation of the sheriff's sale, the payment of the purchase money, and the execution of the deed was subject to the lien of the claims of the general creditors of Wolff's estate. The purchaser at the sheriff's sale took the land discharged of all the liens, which were accordingly transferred to the fund realized from the sale. The rights of the parties were fixed by the confirmation of the sale. "Lien creditors who were such at that time are entitled to their respective shares of the fund realized, and delay of the court in decreeing distribution cannot deprive them of their rights. If there is any question as to the lien of a debt, or whether it is barred by the statute of limitations, the status of the claim at the time the sale was confirmed must determine it. Whether it be a debt of record or not, if it was then a lien on the land sold and was not then barred by the statute of limitations, it is entitled to participate in the distribution of the fund, pro-

vided it is not all exhausted by prior liens:" Arndt's Appeal, 117 Pa. 120; Douglass's Appeal, 48 Pa. 223; Tomlinson's Appeal, 90 Pa. 224. The case of a sale upon a mortgage, which is essentially for the payment of debts, is clearly distinguishable from a sale in partition, for the purpose of dividing land between tenants in common. "A sale for partition, therefore, works a conversion of the form without a transmutation of the essence; and this distinguishes it from a sale for the payment of debts, of which transmutation is the primary and entire intent. . . . In every judicial sale for the payments of debts, however, the money raised for the object is in course of administration, and no process lies against it to enforce or continue a lien on it; but money raised incidentally by process of partition, is land in another form, and attended with inheritable qualities:" Commonwealth v. Pool, 6 Watts, 32; Dolan's Estate, 231 Pa. 180. The claims of the appellees were liens upon the land at the time it was sold by the sheriff under the proceeding upon the mortgage, the lien of the debts was divested by that sale, and the appellees were entitled to participate in the distribution of the fund realized from the sale.

The decree is affirmed and the appeals are dismissed at cost of the appellants.